F. P. E. Noteholders Corporation v. Commissioner.
F. P. E. Noteholders Corp. v. Commissioner
Docket No. 2804.
United States Tax Court
1945 Tax Ct. Memo LEXIS 254; 4 T.C.M. (CCH) 349; T.C.M. (RIA) 45110; 03/30/1945 Opinion Vacated May 10, 1945 Kurt J. Kremlick, (an officer), for the petitioner. Melvin S. Huffaker, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax liability and declared value excess profits tax liability. Deficiencies were determined as follows: Declared
Year Ending
Value Excess
October 31, in
Income Tax
Profits Tax
1939
$1,045.60
$115.76
1940
124.68
1941
2,973.77
116.91
The question is whether petitioner, in computing its basis for property required at "Scavenger Sale" under the law of Michigan could add to the amount paid at such sale a value for a "right *255 to redeem" previously held by it. [The Facts] A stipulation of the facts was filed by the parties, and we find the facts as therein set forth. Omitting references to exhibits attached, which are not considered necessary of recital, such stipulation in material part reads: 1. Petitioner is a Michigan Corporation with its principal office at 1402 Eaton Tower, Detroit, Michigan. The Federal tax return for the year 1941, the year involved in this proceeding, was filed with the Collector for the district of Michigan at Detroit, Michigan. 2. In reporting income, petitioner files returns on a cash basis and uses a fiscal year which commences November 1, and ends October 31. 3. Petitioner was incorporated under the laws of Michigan on December 7, 1938, as a result of 77-B reorganization proceedings which were instituted May 7, 1937, in the United States District Court for the Eastern District of Michigan, Southern Division, by the creditors of Francis Palms Estate Properties, Inc. The plan was confirmed August 10, 1938, and the former note-holders of Francis Palms Estate Properties, Inc., became the stockholders of petitioner. The stock was then placed in the hands of a stocktrustee *256 who issued voting trust certificates. 4. Under the Plan of Reorganization, certain parcels of real estate were to be transferred to the petitioner to manage and liquidate and distribute the proceeds pro rata to the stockholders. One of the properties to be transferred to petitioner was known as the Chesterfield Farm. In the reorganization proceedings, two appraisals were made of Chesterfield Farm for the benefit of the Court; one such appraisal was for $65,000 and was made by "Taney"; the other appraisal was for $75,825 and was made by "Eston." At the time those appraisals were made, the delinquent taxes on Chesterfield Farm amounted to $38,192.33 and the then assessed valuation for state and local tax purposes was $82,900. 5. On May 1, 1938, and prior to confirmation of the plan (August 10, 1938), the Chesterfield Farm property was acquired by the State of Michigan at tax sale. In the reorganization proceedings, petitioner acquired the right to redeem Chesterfield Farm within an eighteen-month statutory period for redemption which expired November 3, 1939, but petitioner did not redeem such property within such period and title thereto at that time vested and became absolute in *257 the State of Michigan. 6. Accumulated and unpaid taxes against Chesterfield Farm as of November 3, 1939, amounted to approximately $65,000. 7. In February 1940, Chesterfield Farm was put up at public auction by the State of Michigan to be sold at a so-called "Scavenger Sale" as provided by Act 155 Public Acts of Michigan 1937, as amended; Sections 7.951-7.964, Michigan Statutes Annotated, and was purchased at that sale by the petitioner on land contracts for $21,464.86. 8. After petitioner purchased the Chesterfield Farm property at Scavenger Sale, the property was subdivided and a number of lots therein were sold by petitioner in 1941. In determining the cost basis of the entire Chesterfield Farm property to be used by petitioner for the purpose of computing gain or loss on the individual lots sold in 1941 and thereafter, the petitioner set up on its books a value of $25,000 for the right to redeem such property as of the date of its incorporation in 1938 and petitioner included that amount in the cost basis in addition to the purchase price paid therefor at the Scavenger Sale, plus subsequent improvements. 9. The only question in this proceeding is whether under such circumstances *258 the $25,000 item (referred to in [*] 8 above) should be included as a part of the cost of such property to petitioner. The only assignment of error set forth in the amended petition filed has to do with the year ending October 31, 1941, and in substance alleges error of the Commissioner in disallowing, as a part of cost of "Chesterfield Farm" purchased by petitioner at "Scavenger Sale" the amount of $25,000 set up on petitioner's books as the value of its right (as grantee of the former owner) to redeem such property at such "Scavenger Sale." The parties have filed briefs devoted in substance to the question whether the petitioner, when it purchased at "Scavenger Sale" in February 1940, did so, as petitioner in effect argues, pursuant to a right in the nature of an equity of redemption owned by it since its acquisition, or since August 10, 1938, when the plan of reorganization was confirmed under section 77-B of the Bankruptcy Act; or whether, as respondent contends, petitioner had lost all interest in the property when the period of redemption expired on November 3, 1939, "and title thereto at that time vested and became absolute in the State of Michigan", so that, when petitioner *259 purchased at Scavenger Sale in February 1940 it did so as a mere purchaser and has in the property only the base of $21,464.86 purchase price, and not also the $25,000 which petitioner had set up on its books as cost of its right to "redeem." In the state of the record in this case, however, we find it unnecessary to decide the question so briefed, for the following reason: The Commissioner denied the inclusion of the $25,000 in petitioner's basis for the property. The petitioner alleges, and the answer denies, that the statutory "bid matching right of repurchase" had definite market value and was worth more than $25,000. The stipulation of facts filed contains no agreement as to the value or the cost of or just how petitioner acquired the "bid matching right". It indicates merely that the petitioner set such right up on its books as having a value of $25,000. Under such circumstances, even assuming without deciding, that the petitioner's relation to the property amounted in effect to an equity of redemption, thus adding something to its basis of cost, lack of proof of such cost basis prevents our ascribing any value to it. It is true that some expressions in respondent's brief indicate *260 that the respondent seems to have assumed that the value of the petitioner's right, if any, was stated by the petitioner and yet upon the whole record we are not justified in so concluding. The deficiency notice holds that the "$25,000 set up on your books" does not constitute a part of the cost of the property, and eliminates that amount. Though it is referred to as "value of right to redeem" in the deficiency notice, a fair interpretation of the whole notice indicates no admission of fact that the cost basis was $25,000; and other references in respondent's brief make reference, not to the $25,000 as value of petitioner's right, but as the amount set up on its books as value thereof, and as "$25,000 which it contends is a part of its cost basis." Mere setting up the amount on books is not proof of basis. We may not, under such circumstances, ascribe to the parties intent to agree that the power of the petitioner to acquire property at the Scavenger Sale had a basis of $25,000 to the petitioner; yet it is clear that there is otherwise no evidence by which we might determine petitioner's basis in the right asserted. Therefore, no error appears in the Commissioner's denial of the addition *261 to basis sought by the petitioner. Decision will be entered for the respondent.